IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SWINDELL-FILIAGGI, ET AL., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| CSX CORPORATION & CONRAIL | : | NO. 12-6962 |
| | : | |
| Defendants | : | |

**MEMORANDUM RE: PLAINTIFFS' MOTION TO REMAND**

**Baylson, J.**                                                                                           **February 8, 2013**

**I.     INTRODUCTION**

This diversity case raises an issue that has divided courts in this District. Plaintiffs have moved to remand this action to state court on the basis of the "forum defendant rule," 28 U.S.C. § 1441(b)(2). The forum defendant rule provides that an action cannot be removed on the basis of diversity jurisdiction "if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Defendants argue that this rule does not bar removal here because when CSX Corporation (the out-of-state defendant) filed for removal, Conrail[1] (the in-state defendant) had not yet been "properly joined and served." Although Defendants' argument finds some support in the literal meaning of the statute, a statute should not be read literally when doing so produces, as here, an absurd result at odds with congressional intent. For the reasons that follow, therefore, the Court will grant Plaintiffs' motion to remand.

---

[1] Although "Conrail" is the named party in this dispute, its correct corporate name is Consolidated Rail Corporation.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The parties do not dispute that complete diversity exists in this case.  Plaintiffs are citizens of New Jersey; Defendant Conrail maintains its principal place of business in Pennsylvania, and Defendant CSX Corporation ("CSX") is incorporated in Virginia with a principal place of business in Florida.

On November 30, 2012, Plaintiffs suffered alleged injuries when CSX's bridge in Paulsboro, New Jersey collapsed under the weight of one of Conrail's cargo-bearing trains, causing a large leak of vinyl chloride monomer (a known human carcinogen).  On December 12, 2012, Plaintiffs filed their complaint in Philadelphia County's Court of Common Pleas and emailed a courtesy copy of the complaint to Conrail's counsel.  The following day, CSX filed a notice of removal.  At the time CSX filed for removal, Plaintiffs had not yet served either Defendant.  Several hours after CSX filed for removal, Conrail waived service.

## III.  LEGAL BACKGROUND

### A.  Basis for Remand

Under 28 U.S.C. § 1447(c), a plaintiff may remand an action to state court if removal was "procedurally defective."  Snider v. Sterling Airways, Inc., No. 12-3054, 2013 WL 159813, at *1 (E.D. Pa. Jan. 15, 2013) (Joyner, C.J.).  A removal is procedurally defective if, *inter alia*, it violates the "forum defendant rule."  Under the forum defendant rule, a civil action that is "otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).

### B.  Relevant Tenets of Statutory Interpretation

Two well-established tenets of statutory interpretation are material to this dispute.  First, "removal statutes are to be strictly construed against removal and all doubts should be resolved

in favor of remand." Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987). This doctrine is based on two principles: courts should err in favor of removal when their subject matter jurisdiction is in doubt, id.; and federal courts should have "[d]ue regard for the rightful independence of state governments" to "provide for the determination of controversies in their courts." Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Feld v. Allstate Ins. Corp., No. 03-4024, 2003 WL 22271674, at *2 (E.D. Pa. Aug. 4, 2003). Although the first principle is not applicable to this dispute[2], the second principle about due regard for the independence of state courts is applicable. Accordingly, the Court will construe the removal statute narrowly.

The second relevant tenet of statutory interpretation is that the plain meaning of a statute is generally, *but not always*, dispositive. Courts are entrusted "to construe [statutory] language so as to give effect to the intent of Congress." United States v. Am. Trucking Ass'ns, 310 U.S. 534, 542 (1940). As a general rule, "there is . . . no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." Id. However, when the plain meaning is "absurd," courts should look "beyond the words to the purpose of the act." Id.; accord Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982) ("It is true that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); In re Kaiser Aluminum Corp., 456 F.3d 328, 338 (3d Cir. 2006) ("A basic tenet of statutory construction is that courts should interpret a law to avoid absurd or bizarre results.").

---

[2] The Court's subject matter jurisdiction is not in doubt. See Snider, 2013 WL 159813, at *5 ("The presence of a forum defendant in a case which otherwise satisfies the requirements of 28 U.S.C. § 1332 is [a] procedural defect [that] does not implicate this Court's subject matter jurisdiction." (citing Korea Exch. Bank v. Trackwise Sales Corp., 66 F.3d 46, 50 (3d Cir. 1995))).

3

### C.      Congressional Intent

#### *1.      Removal Statute*

One of Congress's key intentions in revising the removal statute was to limit the ability of defendants to remove cases to federal court. See American Fire & Cas. Co. v. Finn, 341 U.S. 6, 10 (1951) ("The Congress, in the revision, carried out *its purpose to abridge the right of removal*." (emphasis added)). Judicial interpretation of the "meaning and effect" of removal statute provisions "should be carried out in the light of the congressional intention." Id.

#### *2.      Forum Defendant Rule*

The "purpose of diversity [jurisdiction] is to provide a separate forum for out-of-state citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the federal courts." S.Rep. No. 1830, 85th Cong., 2d Sess., reprinted in 1958 U.S. Code Cong. & Admin. News 3099, 3102. The forum defendant rule, 28 U.S.C. § 1441(b)(2), recognizes that "the rationale for diversity jurisdiction no longer exists" when one of the defendants is a citizen of the forum state since "the likelihood of local bias is reduced, if not eliminated." Allen v. GlaxoSmithKline PLC, No. 07-5045, 2008 WL 2247067, at *4 (E.D. Pa. May 30, 2008) (Baylson, J.).

#### *3.      "Joined and Served"*

The forum defendant rule prohibits removal "if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Although there is no legislative history on the "joined and served" requirement, Sullivan v. Novartis Pharms. Corp., 575 F. Supp. 2d 640, 644 (D.N.J. 2008), this Court—and many others—have recognized that it is designed "to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend

to proceed, and whom it does not even serve." Allen, 2008 WL 2247067, at *4; see also Sullivan, 575 F. Supp. 2d at 645 ("Congress appears to have added the language only to prevent the then-concrete and pervasive problem of improper joinder."). In short, the "joined and served" provision ensures that the ability of non-forum defendants to meet the 30-day removal deadline[3] is not held hostage to the gamesmanship of plaintiffs.

## IV. THE PARTIES' ARGUMENTS

### A. Interpretation of Forum Defendant Rule

Defendants point to opinions by Judge Bartle and Judge Ludwig[4] that support their argument that the "plain meaning" of the "joined and served" requirement should be strictly applied. Valido-Shade v. WYETH, LLC, 875 F. Supp. 2d 474, 478 (E.D. Pa. 2012) (Bartle, J); Boyer v. Wyeth Pharms., Inc., 2012 WL 1449246, at *2 (E.D. Pa. Apr. 26, 2012) (Ludwig, J). In Valido-Shade, Judge Bartle wrote:

> [U]nder the plain meaning of § 1441(b) an out-of-state defendant, by monitoring state court dockets electronically or otherwise, can dash to the federal courthouse almost immediately with a notice of removal before the complaint is served on it and on an in-state defendant. As a consequence of advances in technology, there may well be fewer diversity actions precluded from removal under § 1441(b) than heretofore. If this result is deemed to be bad public policy, the remedy lies with Congress which, subject to constitutional limitations, controls the scope of this court's subject matter jurisdiction and any right of removal.

875 F. Supp. 2d at 478.

Plaintiffs counter by pointing to an opinion by Judge Rufe, as well as several decisions from the District of New Jersey, that endorse looking beyond the plain meaning of the "joined

---

[3] Pursuant to 28 U.S.C. § 1446(b)(1), a defendant must file a notice of removal within 30 days of being served.
[4] Defendants also claim that Judge Stengel endorsed the plain meaning approach in Banks v. Kmart Corp., No. 12-607, 2012 WL 707025 (E.D. Pa. Mar. 6, 2012). As discussed below, however, Judge Stengel's opinion provides minimal support for Defendant's position because he addressed a scenario that implicates Congress's interest in preventing plaintiff gamesmanship (i.e., the plaintiff served the non-forum defendant but, after three weeks, showed no indication of serving the forum defendant).

and served" requirement when a literal interpretation produces absurd results that are at odds with congressional intent. In re Avandia Marketing, Sales Practices & Prods. Liab. Litig., 624 F. Supp. 2d 396, 410-11 (E.D. Pa. 2009) (Rufe, J); Sullivan, 575 F. Supp. 2d at 646-47; Fields v. Organon USA Inc., No. 07-2922, 2007 WL 4365312, at *5 (D.N.J. Dec. 12, 2007). In Fields, the court noted that

> [t]he result of blindly applying the plain "properly joined and served" language of § 1441(b) is to eviscerate the purpose of the forum defendant rule. It creates a procedural anomaly whereby defendants can always avoid the imposition of the forum defendant rule so long as they monitor the state docket and remove the action to federal court before they are served by the plaintiff. In other words, a literal interpretation of the provision creates an opportunity for gamesmanship by defendants, which could not have been the intent of the legislature in drafting the "properly joined and served" language.

2007 WL 4365312, at *5 (footnote omitted). Judge Rufe, who agreed with the Fields and Sullivan opinions, stated that the "rationale" for the "joined and served" requirement is only "implicated" when the non-forum defendant has actually been served. Avandia, 624 F. Supp. 2d at 411. Based on this, Judge Rufe concluded that enforcement of the statute's plain meaning is not appropriate when the non-forum defendant remains unserved. Id.

In light of the conflicting authority within this District, the parties attempt to tip the balance in their favor by focusing on dicta in the opinion this Court issued in Allen, 2008 WL 2247067. In Allen, this Court held that *in-state* defendants cannot rely on the "joined and served" requirement to justify removal. The Court based this conclusion on the "logic and policy" of the forum defendant rule in general, and the "joined and served" requirement in particular. Since "the intent behind the 'joined and served' requirement is to avoid gamesmanship," the Court concluded "it would be especially absurd to interpret the same 'joined and served' requirement to actually condone a similar kind of gamesmanship from defendants—

removing before service, in order to later claim federal jurisdiction, for lack of proper service." Allen, 2008 WL 2247067, at *4.

Both parties claim that Allen supports their respective positions in this dispute. According to Plaintiffs, Allen supports looking beyond the plain meaning of the "joined and served" language when a literal interpretation produces results at odds with the congressional purpose. Defendants counter by pointing out that Allen (1) limited its holding to situations where removal is initiated by the *in-state* defendant and (2) specifically distinguished its ruling from a previous opinion, Vanderwerf v. GlaxoSmithKline, PLC., No. 05-1315, 2005 WL 6151369, at *1 (E.D. Pa. May 5, 2005) (McLaughlin, J), where the non-forum defendant was permitted to remove a case prior to service of the in-state defendant. Defendants claim, therefore, that Allen supports removal in "exactly this case" because CSX (the *non-forum* defendant) was the party that filed for removal. CSX's Br. at 7.

**B.     Congressional Intent**

Defendants argue that the congressional intent underlying the "joined and served" requirement does not conflict with the statute's plain meaning. Defendants premise this position on two contentions. First, Defendants claim that the absence of legislative history precludes any determination as to what Congress intended when it enacted the provision in 1948. CSX's Br. at 14 (citing Valido Shade, 2012 WL 2861113, at *1). Second, because Congress has chosen to retain the provision "even when it has not hesitated to amend other aspects of the removal statute in response to charges of perceived 'gamesmanship,'" courts should presume Congress "intended to carry forward and reaffirm the propriety of removal before service." Id. at 14-15.

7

C.     **"Time" of Removal vs. "Date" of Removal**

Arguing in the alternative, Plaintiffs argue that remand is warranted even if the Court follows the plain meaning interpretation of the "joined and served" requirement. Specifically, Plaintiffs argue that the determination of whether Conrail had been served prior to removal should focus on the "date" of removal, not the "time" of removal. Pl's Reply Br. at 7 (citing Boyer, 2012 WL 1449246, at *2 ("The propriety of removal is determined as of the *date of removal*." (emphasis added))). Thus, because Conrail was served on the same day that CSX removed the case, Plaintiffs argue that the "joined and served" condition was fulfilled. Defendants counter that the statute's plain meaning permits removal "up to the very second before the in-state defendant has received (or waived) service." Def's Surreply at 2 (citing Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa., 605 F.2d 119, 123 (3d Cir. 1979) ("Generally speaking, the nature of plaintiffs' claim must be evaluated, and the propriety of remand decided, on the basis of the record as it stands at the *time* the petition for removal is filed." (emphasis added))).

V.     **ANALYSIS**

The position set forth by Judge Rufe (i.e., that the plain meaning of the "joined and served" requirement should not be read literally when the non-forum defendant has not yet been served) is supported by key principles of statutory interpretation as well as the weight of case law in this District—particularly in light of Chief Judge Joyner's recently issued opinion in Snider, 2013 WL 159813. Since Congress intended the removal statute to "abridge the right of removal," American Fire, 341 U.S. at 10, it would be absurd to read the statute as encouraging unserved non-forum defendants to "race to remove" before plaintiffs have the practical ability to effectuate service. Although Judge Bartle and Judge Ludwig have rejected this position, it is

8

consistent with most of the case law in this District—including this Court's opinion in Allen. Accordingly, under the general principle that statutes should not be read to produce absurd results, American Trucking, 310 U.S. at 542, and the specific principle that removal statutes should be construed against removal, Shamrock Oil, 313 U.S. at 108-09, this Court will grant Plaintiffs' Motion to Remand.

### A.    Literal Interpretation of Statute Produces Absurd Result

The Court declines to enforce the plain meaning of 28 U.S.C. § 1441(b)(2) because doing so produces a result that is at clear odds with congressional intent.  Congress intended the removal statute to "abridge the right of removal," and the Supreme Court has instructed that courts be mindful of this intent when interpreting the statute's meaning and effect.  American Fire, 341 U.S. at 9-10.  This congressional intent would be significantly frustrated if unserved non-forum defendants can remove cases simply because they have the technical wherewithal to file for removal before the plaintiff can effectuate service.  As the Fields court noted, a strict literal reading of the statute "creates a procedural anomaly whereby defendants can *always avoid the imposition of the forum defendant rule*[5] so long as they monitor the state docket and remove the action to federal court before they are served by the plaintiff."  2007 WL 4365312, at *5 (emphasis added).  It is absurd to think that Congress intended to "reward defendants for conducting and winning a race which serves no conceivable public policy goal."  Sullivan, 575 F. Supp. 2d at 646.  Further, as this Court has previously recognized, it is "especially absurd" to interpret the "joined and served" rule as allowing naked gamesmanship by defendants since Congress intended for the rule to prevent gamesmanship.  Allen, 2008 WL 2247067, at *4.

---

[5] See Avandia, 624 F. Supp. 2d. at 411 n.32 ("In some state court systems, evidently, the race by defendants to remove before being served by the plaintiff is easily won by defendants because plaintiffs cannot serve defendant before receiving a state track assignment number. This assignment can take over a week from the time the plaintiff files suit, during which time the defendant can learn of the action and remove it to federal court." (quoting Fields, 2007 WL 4365312, at *5 n.2)).

While Defendants argue that Congress has implicitly approved the plain meaning interpretation by failing to amend the "joined and served" language, it remains undisputed that Congress intended for the removal statute to limit the right of removal. Thus, Defendants' argument fails to overcome the fact that rewarding a "race to remove" is at odds with Congress's interest in limiting the right of removal. Under the principle, therefore, that the plain meaning of a statutory provision should not be enforced when it is clearly at odds with congressional intent, the Court will look beyond the strict, literal meaning of the statute.

**B.      Weight of Authority in District Is Consistent with Judge Rufe's Position**

Most of the cases in this District that have addressed the forum defendant rule have either expressly adopted, or are consistent with, the rule set forth by Judge Rufe in Avandia, 624 F. Supp. 2d at 411. These cases include (1) a recently issued opinion by Chief Judge Joyner, (2) this Court's opinion in Allen, (3) an opinion by Judge Pratter that the parties did not brief, and (4) an opinion by Judge Stengel that Defendants problematically claim supports their bright-line, plain meaning interpretation.

*1.      Chief Judge Joyner's Opinion (January 2013)*

After the parties submitted their briefs, Chief Judge Joyner issued an opinion that squarely sides with Judge Rufe's and Plaintiffs' position. Snider, 2013 WL 159813, at *2. Agreeing with Judge Rufe, Chief Judge Joyner reasoned that Congress's interest in preventing plaintiffs' gamesmanship is simply not triggered until the non-forum defendant is actually served, as it is only then that the non-forum defendant enters the time-sensitive state of limbo that can lead to the abuses Congress sought to prevent.[6]  See id. ("[A]ll unserved defendants, forum and non-forum alike, stand on the same footing such that ignoring the presence of

---

[6] Joyner noted that he "express[ed] no view on the situation some courts have confronted where a non-forum defendant which has been served files a notice of removal prior to service upon a forum defendant." Id.

10

unserved forum defendants is improper."). Accordingly, since removal statutes should be "strictly" construed against removal, Chief Judge Joyner concluded that the "joined and served" requirement should not be read to "encourage, and reward" "race to remove" tactics that "do[] nothing to advance the core purposes of diversity jurisdiction." Id.

## 2.     *This Court's Opinion in Allen*

Although Defendants argue that this Court's opinion in Allen supports the blanket rule that non-forum defendants can always remove prior to the forum defendant being served, a close reading of Allen shows that it neither endorses, nor contemplates, such a broad rule. The Allen opinion, which dealt with an unserved *forum* defendant, only discussed the rights of non-forum defendants in the context of distinguishing Judge McLaughlin's opinion in Vanderwerf. See Allen, 2008 WL 2247067, at *5. This is important because Allen specifically noted that the forum defendant in Vanderwerf had "still had not been served" when it filed for removal *three weeks* after receiving service. Id. at 5 n.7. In short, the Allen opinion only contemplated the rights of non-forum defendants in a scenario involving a *served* non-forum defendant (the precise scenario that justifies a literal reading of the "joined and served" under Judge Rufe's approach); Allen's dicta about the rights of non-forum defendants should be read in this context.

Not only did Allen not endorse the bright line rule that Defendants assert, but its reasoning and holding highlight that the "joined and served" requirement's plain meaning should give way when it produces an absurd result. Allen held that the "joined and served" requirement should not be read literally when the forum defendant is the party seeking removal. The Court reached this conclusion by contrasting the literal meaning with the underlying "logic and policy" of (1) diversity jurisdiction, (2) the forum defendant rule, and (3) the "joined and served" requirement. The Court stands by this analysis and finds the same considerations justify looking beyond the plain meaning of the statutory text in the instant dispute as well.

*3.     Judge Pratter's Opinion*

In Copley v. Wyeth, Inc., Judge Pratter held that removal was proper because the *served* non-forum defendant had "removed the case *well before* Ms. Copley joined and served the only forum defendant." No. 09-722, 2009 WL 1089663, at *3 (E.D. Pa. Apr. 22, 2009). Judge Pratter stated that she derived the "significance" of this fact from Judge Rufe's opinion in Avandia. Id.

*4.     Judge Stengel's Opinion*

Defendants cite Judge Stengel's opinion in Banks v. Kmart Corp., No. 12-607, 2012 WL 707025, at *2 (E.D. Pa. Mar. 6, 2012) as authority for strictly interpreting the literal meaning of the "joined and served" rule. The facts in Banks, however, are precisely the facts that would justify a literal interpretation under Judge Rufe's aproach. In Banks, the plaintiffs had not yet served the forum defendant (a party "that might not even be the proper defendant") when the non-forum defendant filed for removal *three weeks* after being served. 2012 WL 707025, at *2. As Judge Stengel noted, "the plaintiffs' *litigation strategy* facilitated removal to this Court because the plaintiffs served the non-forum defendant several weeks prior to serving the forum defendant in this case." Id. (emphasis added). In contrast to the facts of Banks, CSX's decision to remove the case had nothing to do with Plaintiffs' "litigation strategy," as it filed for removal before the Plaintiffs had a practical opportunity to serve either Defendant.

C.     THE TIMING OF SERVICE

Even if the Court was to enforce the plain meaning of the statute, it is not at all clear that this would necessitate denial of Plaintiffs' motion. The statute allows removal if the forum defendant has not been "joined and served." Here, there is no dispute that on the same day that CSX filed for removal, Conrail was served. Although Defendants insist that the Court must focus on the circumstances that were present at the precise *time* of removal (versus the *date* of removal), the plain meaning of the statute does not dictate this result.

Defendants' reliance on Westmoreland to support their "plain meaning" interpretation is misplaced.  In Westmoreland, the court had to determine whether removal was justified on the basis of *federal question* jurisdiction.  In that distinct context, the court was justified in relying on the longstanding doctrine that removal is to be "determined according to the plaintiffs' pleading at the time of the petition for removal." Pullman Co. v. Jenkins, 305 U.S. 534, 537-38 (1939) (citing cases).  The fact, however, that removal in *federal question* cases must be assessed based on the *pleadings* at the time of removal does not dictate that courts in *diversity cases* must limit their consideration to the defendant's *service status* at the time of removal.[7]  Nothing in Westmoreland, or Pullman,[8] or the statute's plain meaning, therefore, requires this Court to limit its analysis of Conrail's service status to the precise time of removal, versus the date of removal (or even the date on which Plaintiffs filed their motion to remand).  Accordingly, because "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand," Steel Valley, 809 F.2d at 1010, this Court will adopt, as an alternative holding, that the plain meaning of the forum defendant rule mandates remand because, on the same day CSX filed for removal, Conrail was served.

## VI.    DEFENDANTS' REQUEST FOR A STAY

Defendants have asked that a stay be issued on mailing a certified copy of the remand order if the Court decides (as it does) that a remand is appropriate.  Surreply Br. at 1 n.1.

---

[7] The Court recognizes that "a long line of authority supports the proposition that when diversity of citizenship is the basis of removal, diversity must exist not only at the time the action was filed in the state court, but also at the time the case is removed to federal court."  14B Charles Alan Wright, et al., Federal Practice and Procedure § 3723 (4th ed. 2012).  Here, there is no dispute that the parties were diverse at the time of removal.  The question is whether the forum defendant was properly *served*; this a fundamentally different question because it does not implicate the Court's subject matter jurisdiction.

[8] In Pullman, the Court expressly rejected Defendants' position, stating "the fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant."  305 U.S. at 541.  Although Pullman was decided before Congress codified the "joined and served" requirement, the Court's opinion demonstrates that the considerations which dictate that federal question jurisdiction be assessed at the time of removal do not dictate that removal based on diversity jurisdiction be assessed in the same manner.

Defendants make this request because they believe the Third Circuit should be given an opportunity to resolve the split in authority in this District. As Defendants note, once the remand order is sent to state court, the Third Circuit will lose jurisdiction to hear the appeal.

There are several problems with Defendants' request. First, they don't cite any authority from either this District, or the Third Circuit, to justify a certification of appeal under similar circumstances. Second, one of the justifications they provide (i.e., that there is a public interest in resolving contradictory rulings on a "jurisdictional question") appears inapposite because this dispute—as Defendants elsewhere recognize—is not about the Court's subject matter jurisdiction, but about a procedural requirement in the removal statute.[9] And, third, staying the remand order would be in tension with the longstanding doctrine that federal courts should interpret removal statutes with "[d]ue regard for the rightful independence of state governments" to "provide for the determination of controversies in their courts." Shamrock Oil, 313 U.S. at 108-09; see also Feld, 2003 WL 22271674, at *2.

## VII. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' Motion to Remand and deny Defendants' request for a stay.

An appropriate Order follows.

O:\CIVIL 12\12-6962 swindell-filiaggi v. conrail\opinion.docx

---

[9] "The presence of a forum defendant in a case which otherwise satisfies the requirements of 28 U.S.C. § 1332 is [a] procedural defect [that] does not implicate this Court's subject matter jurisdiction." Snider, 2013 WL 159813, at *5 (citing Korea Exch. Bank, 66 F.3d at 50).